Odell WATSON *v.* STATE of Arkansas

CR 82-39                                    640 S.W.2d 447

Supreme Court of Arkansas
Opinion delivered October 18, 1982

*William R. Simpson, Jr.*, Public Defender, and *Sandra Berry*, Deputy Public Defender, by: *Arthur Allen*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Matthew Wood Fleming*, Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Odell Watson was convicted of rape in the Pulaski County Circuit Court and sentenced to forty years in prison. He argues three reasons for reversal: First, that his confession was not admissible; second, that a mistrial should have been granted when a prosecuting witness volunteered prejudicial testimony; and, finally, that the court refused to permit evidence of prior sexual conduct of the victim. We find no prejudicial errors and affirm the conviction.

When Watson was first questioned he denied the rape. Then within three hours he confessed that he forced the victim to have sexual intercourse with him. Watson argues that since he denied any wrongdoing before he signed a confession, we should interpret the law to be that once a person makes such an exculpatory statement, he cannot be requestioned. While no authority is cited for that proposition, it is argued that the case of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), in spirit, holds this. Watson also argues, without citing any authority, that the form he signed acknowledging and waiving his rights violated his rights because it did not make clear that an accused can waive one or more of his rights without making a total waiver. We find no merit to either argument. Watson made no attempt to assert any of his rights. He never asked for a lawyer and never indicated

his desire to remain silent. Watson was read his rights as well as being allowed to read the form before being questioned. We consider the totality of the circumstances to determine whether a statement is voluntary and, in this case, we find no basis, factual or legal, to hold his statement involuntary. *Branam* v. *State,* 275 Ark. 16, 627 S.W.2d 8 (1982); *Lockett* v. *State,* 275 Ark. 338, 629 S.W.2d 302 (1982).

Watson's second argument is that a deputy sheriff volunteered a highly prejudicial statement during cross-examination. He said that the doctor who examined the victim told him that the victim had been choked. We quote verbatim from the transcript the relevant testimony and statements by counsel and the court:

Q Detective Means, how long have you been a detective with the Sheriff's Office?

A Since the first of this year.

Q And is this your first case in Circuit Court?

A Yes, ma'am.

Q Okay. And did you have occasion to talk with Odell in your office. That was on May the 11th, 1981, wasn't it?

A Yes, ma'am.

Q And on May the 9th, two days before, you had talked to [the victim] and took a statement from her?

A Yes, ma'am.

Q And you knew that she was saying something about being *choked,* didn't you? [Emphasis added.]

A Yes, ma'am.

Q So, to you it was important to know about whether she was *choked* or was not *choked.* Isn't that correct? [Emphasis added.]

A Yes, ma'am.

Q So, when you talked to Odell, you really wanted to know about that because it was important to you, wasn't it?

A I wanted Odell to tell me about it. The doctor had already told me that he felt she was *choked* because of bruises on her neck or soreness on her neck. [Emphasis added.]

. . .

DEFENSE COUNSEL:

I would like to ask for a mistrial at this time. I think it's prejudicial for him to say what the doctor said.

THE COURT:

You can argue it to the jury. It was in response to your question. And you've got a stipulation in the record that the doctor said he didn't find anything. You can argue this to the witness, if you want to.

DEFENSE COUNSEL:

I think it's prejudicial. Would you instruct the jury that the doctor did not say that.

THE COURT:

It would be a comment on the evidence.

DEFENSE COUNSEL:

It's not in evidence. That is not the evidence.

THE COURT:

You may take this witness and say, 'It's funny that the doctor would say that to you because he didn't say

that in his testimony. We've got a stipulation to that effect.' And read the stipulation.

It's a question of fact now. It's a matter of credibility of whether he really did or did not but his testimony is he didn't find any evidence of bruises to the throat.

To instruct would be comment, I think. To admonish would be comment and I think it would bring more attention to it that it deserves. So, I think you better just go ahead.

The victim had testified that Watson had choked her and in his statement Watson admitted that he had choked her. The doctor who examined the victim did not testify but instead by stipulation the doctor's statement was read to the jury. In it the doctor stated he had checked the victim's neck region and although she had complained of pain and tenderness, he found no "visible abnormalities." But he qualified that by saying bruises would not always become apparent within several hours and that bruising to black people is less pronounced and less visible than in white people. The victim was a black woman.

Three times in questions, counsel mentioned the word "choked" to the officer. This was during cross-examination. We cannot say the court was clearly wrong in making its decision that the defense counsel invited the answer. In the case of *Robinson* v. *State,* 275 Ark. 473, 631 S.W.2d 294 (1982), we upheld the court in denying a mistrial for a very similar reason:

When the appellant injects the matter into the case by questions on cross-examination, he cannot complain of what develops. Since appellant asked the specific question, the officer could truthfully answer it. The granting of a threshold motion to prevent certain testimony does not require a witness to conceal the truth in order to respond to a question by the moving party.

We recently affirmed this principle. *Sanders* v. *State*, 277 Ark. 159, 639 S.W.2d 733 (1982). Even if it was error it was certainly not of the magnitude to require a mistrial. It may well have required an admonition but no admonition was requested. *Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981).

The other alleged error is that the trial court refused to allow Watson to testify that he was told by his co-defendant, Cedric Garner, that Garner had had sexual relations with the victim. The defense argues that the question was relevant to Watson's "state of mind" and, so, relevant to his defense of consent. The court ruled at a pretrial hearing that it would admit evidence pertaining to prior sexual relations the victim had with either Watson or co-defendant Garner. But that did not mean inadmissible evidence would be received. The question was not asked of Garner. It was a question asking Watson for a pure hearsay answer and, therefore, violated the rules of evidence. Ark. Stat. Ann. § 41-1810.1 (Repl. 1977); *see Bobo* v. *State*, 267 Ark. 1, 289 S.W.2d 5 (1979).

Affirmed.

ADKISSON, C.J., and PURTLE and HAYS, JJ., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. I dissent from the majority opinion because the deputy sheriff gave a highly prejudicial unresponsive answer to a question asked by the defense.

The parties stipulated what the doctor's testimony would be at trial. He was excused from appearing on that basis.

To have the deputy sheriff volunteer that the doctor had expressed an opinion contrary to his stipulated statement was highly prejudicial under the facts of this case.

JOHN I. PURTLE, Justice, dissenting. I dissent from the majority opinion because I believe a mistrial should have been granted. I have no problem with the majority's holding regarding the rights waiver form. I would like to say that the

rights form used by the Pulaski County Sheriff's Department in this case is the best form which I have observed during my tenure on this court. However, in my opinion, the incident involving the officer's testimony is so clearly manipulative on the part of the officer that I think the misconduct requires the case to be tried again. In order to focus on the problem in this case I will set forth the pertinent question and answer as reported from the trial:

> Q. So, when you talked to Odell, you really wanted to know about that because it was important to you, wasn't it?

> A. I wanted Odell to tell me about it. The doctor had already told me that he felt that she was choked because of the bruises on her neck or soreness on her neck.

This answer is completely unresponsive to the question and, in my opinion, was the result of deliberation on the part of the officer making the uninvited and unresponsive statement. The doctor's statement had already been entered into the record through stipulation between the parties. At no point in the stipulation did the doctor state that he found bruises on her neck or that he felt she had been choked. Not only was the officer's answer not responsive but it was an apparent attempt to impeach the stipulation which had settled the matter so far as the doctor's testimony was concerned. To allow such questionable and prejudicial information to come before the jury is to deny the appellant his rights to a fair trial. It also does a disservice to the law enforcement profession to think that one of their members is not bound by the rules which govern the rest of us. The only remedy, upon proper motion, is to retry the case. *Haight v. State*, 259 Ark. 478, 533 S.W.2d 510 (1976).

HAYS, J., joins in this dissent.