James David SIMPSON, Jr. *v.* STATE of Arkansas

CR 82-126                                                    645 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered February 7, 1983

*Lessenberry & Carpenter,* by: *Thomas M. Carpenter;* and *Charles L. Carpenter, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. This is the second appeal of this case. We ordered a new trial the first time because the defense was limited in its cross-examination of a witness. *Simpson* v. *State,* 274 Ark. 188, 623 S.W.2d 200 (1981).

James David Simpson, Jr. was again convicted, this time on two counts of capital murder and sentenced to life without parole on each count.

The evidence of Simpson's guilt was overwhelming. The State produced an eyewitness to the double execution-style murders. Simpson and another man came to a trailer in North Little Rock on March 4, 1979, where Carl Gilmore, his girl friend, Cecelia Pigg Marks, and Larry Gilmore, Carl's brother, lived. Carl, Larry, their brother Grealing, and Cecelia were all there. All four were shot by Simpson and the other man. Larry and Grealing Gilmore were killed; Carl survived as did Cecelia Pigg Marks, although she had been shot three times. She was the State's main witness, and identified Simpson as one of the killers.

In this appeal three arguments are raised for reversal. Two of them may be disposed of quickly. The State's proof of robbery, the underlying felony to the capital murders, is questioned. Marks said she saw one of the men counting money from a billfold and testified that "Larry or Carl one said that Grady [Grealing] didn't have any more money." This was sufficient evidence to support the robbery allegation. It is also argued that capital murder and first degree murder charges overlap and the instructions for the similar crimes allow a jury to arbitrarily choose between the two. We adhere to our prior decisions which hold that the statutes are constitutional. *Simpson* v. *State, supra; Earl* v. *State,* 272 Ark. 5, 612 S.W.2d 98 (1981); *Cromwell* v. *State,* 269 Ark. 104, 598 S.W.2d 733 (1980).

The other argument is that a policeman gave an unresponsive, prejudicial answer to a question during cross-examination. David Jones, a policeman from Memphis, who arrested Simpson, mentioned Simpson's "rap sheet" during cross-examination by Simpson's counsel. Policemen, prosecution and defense attorneys know that a "rap sheet" is a police document that lists the arrests and sometimes the convictions of an individual. *See Shaddox* v. *State,* 243 Ark. 55, 418 S.W.2d 780 (1967). A mistrial was requested and denied. The trial court declined to give an admonition finding that counsel had invited the answer.

While the mention of "rap sheet" is not per se prejudicial, its mention under certain circumstances has been deemed prejudicial error. For example, in *Shaddox* v. *State, supra,* during cross-examination of the defendant by the State, the defendant was questioned about his convictions *and* arrests. At the same time the prosecuting attorney was examining the defendant he was holding a sheet of paper and repeatedly referred to it. We observed, "The reference to the notes undoubtedly could influence members of the jury to feel that the State's attorney was holding irrefutable evidence of previous convictions, and could well have been prejudicial."

In a civil case, a plaintiff's lawyer mentioned the defendant's "rap sheet" during cross-examination of the defendant. After he asked the defendant whether he kept a room in his hotel available for prostitution, the lawyer said he had a "rap sheet" on the defendant. *Shroeder* v. *Johnson,* 234 Ark. 443, 352 S.W.2d 570 (1962). Again we ruled that the manner in which the reference was made was prejudicial.

The facts in this case are unlike those in *Shaddox* and *Shroeder.* Here the defendant's lawyer was questioning a State's witness on cross-examination. No reference at all was made as to what a rap sheet is or what it might contain. The transcript of the critical testimony reveals that neither the questions nor answers were models of directness or clarity. Jones had briefly testified that his office had received a telephone number from Arkansas authorities and it led to a residence occupied by Simpson. The residence was placed

under surveillance. When two or three men helped Simpson load a U-Haul and Simpson tried to leave, he was arrested. The following exchange occurred in the cross-examination of Jones:

Q Now, when you use the word surveillance that is just kind of a technial term meaning we were watching the house because we were asked to watch the house. Isn't it?

A Well, after we had this James David Simpson identified and found that he did have an alias of Little Dave, we did put the residence under surveillance until we could get warrants from Little Rock.

Q Little Dave?

A Yes, sir.

Q You mean that his friends call him Little Dave, also?

A That was the name that was on his rap sheet from the police department.

The appellant argues there were only three possible responsive answers to the last question: Yes, no, or I don't know. Obviously the officer thought the question meant how he knew Simpson was called "Little Dave," and he answered how he knew. The trial court found the answer was invited and that decision has to be discretionary under the circumstances. *See Beed* v. *State,* 271 Ark. 526, 609 S.W.2d 898 (1980); and Ark. Stat. Ann. § 28-1001, Rule 611 (Repl. 1979).

It is suggested that the question which evoked the reference to the rap sheet was an effort by the defense to play-down or diminish the use of the word "alias" by the officer in one of his prior answers. No doubt the appellant hoped for a brief answer but he left the door open for the answer given. *Watson* v. *State,* 277 Ark. 197, 640 S.W.2d 447 (1982). Certainly the answer was not unquestionably unresponsive as the appellant argues.

We cannot say under the circumstances that the trial court clearly abused his discretion or that in view of the evidence of Simpson's guilt, that the trial court erred. *Harrington* v. *California,* 395 U.S. 250 (1969); *See Chapman* v. *California,* 386 U.S. 18 (1967).

We find no other prejudicial errors in the record.

Affirmed.