BRACEY *v.* STATE.

4967                                        331 S. W. 2d 870

Opinion delivered February 8, 1960.

[Rehearing denied March 7, 1960]

*Thomas L. Cashion,* for appellant.

*Bruce Bennett,* Atty. General, by *Thorp Thomas,* Asst. Atty. General, for appellee.

PAUL WARD, Associate Justice. The appellant, John Bracey, is a negro male, 26 years of age. He is here appealing from a judgment of the court sentencing him to die in the electric chair for the slaying of Alberta Miles, a negro female, on January 30, 1959.

Alberta Miles was killed in her home in Eudora on January 30, 1959 but her body was not discovered until the morning of February 3, 1959 when neighbors having noticed her absence, requested the Chief of Police of Eudora to make an investigation. This investigation revealed that the deceased's body was in a partially clothed condition lying on the bed. There was a hole in the left side of her chest apparently caused by a small caliber bullet.

On the next morning after the slaying, appellant, who lived in a house owed by Jack Harrison, left Eudora and went to Vicksburg, Mississippi where he remained for sometime. A search was made of appellant's room where articles of his clothing were found with bloodstains on them which led to the suspicion that he was connected in some way with the slaying. On April 11, 1959, appellant was arrested in McGehee, Arkansas by two members of the McGehee Police Department who knew appellant and had previously learned that he was under suspicion. After his arrest appellant admitted his identity and admitted that he had slain Alberta Miles. His confession was given in detail and reduced to writing and signed by him.

The Prosecuting Attorney filed an Information against appellant charging him with the crime of murder in the first degree for the slaying of Alberta Miles. He was tried on July 15, 1959 and found guilty of murder in the first degree by a jury which fixed his punishment to be death by electrocution. The trial court pronounced judgment in accordance with the jury's verdict.

In due time a Motion for a new trial was filed on the following grounds:

1. The verdict and judgment is contrary to the law.

2. The verdict and judgment is contrary to the evidence.

3. The verdict and judgment is contrary to the law and the evidence.

4. The court erred in permitting the State of Arkansas to introduce into evidence the alleged confession of the defendant over the specific objection of the defendant.

5. The court erred in permitting the State of Arkansas to introduce into the evidence the alleged clothing of the defendant under the specific objection of the defendant.

6. The court erred in not granting the defendant's motion for an instructed verdict at the conclusion of plaintiff's testimony.

The evidence, which we think is sufficient to support the verdict and the judgment, is substantially as hereafter set out.

*Clarence Bethune,* a witness for the State and a licensed embalmer and undertaker at Eudora stated that he knew Alberta Miles during her lifetime and was called to her home on February 3, 1959. Upon entering her home he found her body sitting on the bed with her head in her lap and also found a slopjar which seemed to be filled with bloody water. The room was torn up and portions of her clothing were torn off. There was a bullet hole in her breast on the left side which was apparently caused by a small caliber bullet. *Louella Crawford,* 65 years of age, a resident of Eudora, testified that she was acquainted with Alberta Miles during her lifetime and lived three or four blocks from her. On February 3rd she went to Alberta's house to take a check. Upon arriving at her house she called but no one answered, then she started around to the back where she saw a window broken out although she didn't go into the house. *Jack Harrison,* of Eudora, a witness for the State stated that he knew Alberta Miles for a few years and that he lived about two or three hundred yards from her; that appellant was boarding at his house at the time Alberta Miles was killed; that he went to her house on the 3rd of February and found her dead; and that blood was all over the place and on the bed and that the room appeared to have been ran-

sacked. He further stated that he didn't see appellant on the morning of January 30th but heard him when he came to his room; that after appellant had left he later went to appellant's room and found some of his clothes bloody from top to bottom behind the bed; and that he also found a rubber boot, a pair of pants, and a jacket belonging to appellant which were blood-stained. *Brady Bledsoe,* who lives at Eudora, testified that he also had a room at Jack Harrison's house where appellant lived; that on Saturday morning of January 31, 1959, he saw an empty pistol cartridge behind the toilet outside of Harrison's house and that he showed the empty cartridge to Emmett Davis on February 7th. *Emmett Davis,* a witness for the State, testified that he was acquainted with Alberta Miles and the appellant and that he lived in the back of a store in the vicinity of Alberta Miles' house; that having been advised about appellant's clothes he told Mr. Harrison not to let anyone in the room; that acting upon the information given him by Brady Bledsoe he found the empty cartridge behind the house and that he took it up and gave it to Mr. Mathis, the City Marshal and Deputy Sheriff.

*Mr. Mathis,* a witness for the State, testified substantially as follows: For the past forty years I have been a law enforcement officer in Eudora and for 46 years in Chicot County. I am acquainted with Jack Harrison, John Bracey (appellant) and Alberta Miles; having been advised that Alberta Miles was missing and that there was a window broken on the west side of her house I went to her house in the company of Jack Harrison and Mr. Davis, we entered the two-room house through the window and found the body which was slumped over on the bed; there was a bullet hole in the left side of her chest apparently from a small caliber bullet; appellant resided in the home of Jack Harrison which is about 70 feet from the home of Alberta Miles; the room in which we found the body had papers scattered around and was in a state of disorder; we checked for the bullet hole which has been mentioned heretofore, and there were no other wounds or appearance

of powder burns on the deceased's body; I took several items of clothing from appellant's room and I took a bedspread and a pair of pajamas from the home of Alberta Miles; later I described the clothes to appellant and he told me they were his and also told me that the bloodstains on the articles of clothing in his room came from Alberta Miles. On the day after appellant was arrested in McGehee he confessed the killing of Alberta Miles to the McGehee officers and the following day, in the presence of the Prosecuting Attorney, the Sheriff of Chicot County, and myself, appellant without duress or compulsion gave and signed a full confession.

The confession was introduced in evidence at the trial in connection with Mr. Mathis' testimony.

*The appellant John Bracey,* testified in his own behalf substantially as follows: I was born December 6, 1933, at Vicksburg, Mississippi; since I was 17 I have been engaged in sawmill work having finished the 4th grade in school; I am married but have been separated from my wife for about four years; while in Eudora I worked for the Breece-White Manufacturing Company, and made from $70.00 to $90.00 a week but saved no money. After I got off from work on January 30th I went to town and cashed my check at the liquor store and bought a pint of wine; I drank this right away and then went to the cafe where I drank a quart of beer; then I bought a pint of Old Taylor whiskey which I drank with some beer; then I drank another pint of wine with some beer — spending all that was left of my salary. On my way home from the cafe I passed the home of Alberta Miles with whom I was well acquainted; I turned into the yard and went up to the door but nobody answered, and then I went to the window and called and when she asked who I was I told her; I went into the house through the window where she was sitting in a chair and I told her I didn't want to hurt her but wanted to borrow two or three dollars but she told me she didn't have any money; I didn't believe this so she told me that she had some money in the top drawer of

her dresser but I didn't find anything there; I looked in the drawer again and she came at me and I believe I hit her; I laid down on the bed and went to sleep and when I woke up I put on my pants which were on the chifforobe drawer. I didn't mean to shoot her but meant to shoot over her head to scare her; after I shot her she said I had no business to shoot her and I told her she had no business to hit me; all I got from Alberta's house was $9.00. After I left Alberta's house I went to my room and laid down on the bed and got up early; I was supposed to go to work but when I woke up and saw the blood on my clothes I couldn't figure out where it came from; but I changed my clothes and went down to the bus station. After I left Eudora I sold the pistol for $12.00 and used the money for something to drink. I admitted the killing to the McGehee officers just to get some rest, but when Mr. Mathis came the next day I told him that it was not so — I really don't know what happened; I figured if I was the only one in the house that night it must have been me so I admitted the killing. What I am telling now is the truth.

*Sufficiency of the Evidence.* We have already indicated that we think the evidence is sufficient to sustain a conviction for first degree murder. However, since the confession of appellant was made out of court and later introduced in evidence it was incumbent upon the State to introduce corroborating evidence. It would be a useless repetition to set out again what we have stated heretofore, but suffice to say there is an abundance of this kind of testimony. Appellant in his testimony admitted that he was in the room with the deceased, that he robbed her, and that he actually fired at her. He admitted that he left the State the next morning, that the bloodstained clothes were his and that he sold the pistol with which he fired the fatal blow. In the case of *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, there is this statement: ''We have held that the extrajudicial confession of the defendant accompanied by proof that the offense was actually committed

by someone will warrant his conviction''. There is, of course, much more than this kind of proof in the case under consideration.

*The Confession.* One of the appellant's principal contentions for a reversal is that the court allowed the State to introduce the confession without hearing testimony in chambers relative to whether said confession was voluntary or the result of pressure of some nature. It is true that in several cases, including the case of *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15, this court, in this kind of situation, has stated that the practice approved by us is for the court to hear the testimony in the absence of the jury regarding the circumstances under which the confession was given. However, under the facts and circumstances of this case, appellant's contention is refuted by our holding in the case of *House* v. *State,* 230 Ark. 622, 324 S. W. 2d 112, where we said: ''One contention is that the court erred in permitting the introduction of this document (referring to a confession) without first conducting a preliminary hearing in chambers to determine whether the confession was voluntary . . . but the reason for the rule is to avoid the possibility of the jury's being prejudiced if the court rules the confession inadmissible, and hence the accused has no basis for complaint if the confession is actually admitted in evidence''. Of course, here, the confession of appellant was admitted and we think properly so. While the State's witness, Mathis, was testifying he was asked if appellant admitted to him that he killed Alberta Miles. At this point appellant made the following objection: ''Your Honor, he was laying the ground work to put that confession on the record and I wanted to make my specific objection. I object to the introduction of this alleged confession on the ground that it was involuntarily given and specifically object to its introduction as violating the defendant's right under the Fifth Amendment to the Constitution of the United States''. After the court had overruled the above objection the witness, without further objection, testified at length about the circumstances under which the confession was

made and signed, showing that no pressure or influence of any kind was used, that the confession was read over to appellant, that he had an opportunity to change it if he so desired, and that he signed the same voluntarily. Thereupon and without any further objection by the appellant, the confession was introduced in evidence. Appellant, at no time, during the cross-examination of Mathis or during his own testimony, contended that any force or promise was used to obtain the confession, nor did he deny giving and signing the same. Furthermore, appellant at no time intimated to the court that he desired to have a hearing in chambers. Under these circumstances and under the holding in the *House* case, *supra,* we must conclude that it was not reversible error for the court to permit the introduction of appellant's confession.

*The Clothing as Exhibits.* It is next insisted that the trial court erred in permitting the exhibition of certain bloodstained articles of clothing belonging to appellant and a sheet or bedspread belonging to the deceased. We see no merit in this contention. The introduction of these articles was in the sound discretion of the court and we cannot say the court abused this discretion. In a long line of cases this court has approved the introduction of certain articles of clothing in a trial of this kind. See: *Hankins* v. *State,* 103 Ark. 28, 145 S. W. 524; *Deatherage* v. *State,* 194 Ark. 513, 108 S. W. 2d 904; *Cross* v. *State,* 200 Ark. 1165, 143 S. W. 2d 530; *Bartley and Jones* v. *State,* 210 Ark. 1061, 199 S. W. 2d 965; *Brown* v. *State,* 219 Ark. 647, 243 S. W. 2d 938; and *Atkinson* v. *State,* 223 Ark. 538, 267 S. W. 2d 304. There is in this case an additional reason for the introduction of the articles of clothing above mentioned. As pointed out before it was necessary for the State to introduce evidence corroborating appellant's extrajudicial confession.

*Instructions.* We have carefully examined the numerous instructions given by the trial court and find in them no reversible error. Moreover, appellant made no specific objection to any particular instruction but did

make a general objection to all of them. In the case of *Tiner* v. *State,* 109 Ark. 138, 158 S. W. 1087, which was a first degree murder case in which a general objection was made to several instructions, this court in refusing to recognize the validity of such objection said: "It has been uniformly held by this court that a general exception to certain instructions will not be entertained on appeal, if any of them be good", citing numerous cases. Since that decision this court has many times re-affirmed the announced rule. See: *Massey* v. *State,* 207 Ark. 675, 182 S. W. 2d 671; *Coffer* v. *State,* 211 Ark. 1010, 204 S. W. 2d 376; and *Oliver* v. *State,* 225 Ark. 809, 286 S. W. 2d 17.

We have also examined the entire record in this case independently of any points relied on by appellant and find no reversible error. Therefore, the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.