FARRAR *v.* STATE

5191                                                    400 S. W. 2d 289

Opinion delivered March 14, 1966

[Rehearing denied April 4, 1966.]

*Bon McCourtney, Claude B. Brinton* and *Scott Hunter,* for appellant.

*Bruce Bennett,* Atty. General; *Fletcher Jackson,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. Robert Farrar, appellant herein, shot Laurence Staudt on May 4, 1965, and was convicted by a jury of assault with intent to kill. Punishment was fixed at three years imprisonment, and from the judgment so entered, appellant brings this appeal.

It is first asserted that the verdict was not supported by substantial evidence, but we do not agree. The proof reflects that the two men owned adjoining farms, and that, during the day, they had ''words'' over a drainage problem occasioned by Staudt's rice water draining off through Farrar's property. According to Staudt, appellant said, ''I have got a way of stopping this.'' Both men were drinking during the day. Subsequently, Staudt testified that Farrar asked him to drive him over to the house, and Staudt complied, telling an employee, Gerald Goodwin, to follow them over to Farrar's home. The prosecuting witness stated that after they had arrived, he (Staudt) told Farrar that the latter needed to sleep for several hours, and suggested that he drink a can of beer. Appellant told the witness that there was a can in the refrigerator, and Staudt opened the refrigerator door, squatted, and took the can of beer out. On hearing a click behind him, he turned his head, and saw that Farrar had a shotgun leveled at him. ''Had it pointed right in my face, when I saw it I pushed up, instead of hitting me in the head, hit me, shot me in the abdomen.'' The witness said that Farrar was about eight feet away when he fired the gun. According to his evidence, he had no weapon of any kind, had not fought with Farrar, and had done nothing to the appellant. Counsel argues that appellant was too drunk to form an intent to kill; further, that there was no evidence to explain why the shot was fired, and that the two men had not even had sufficient trouble to cause a fist fight. These arguments are contrary to the proof. As for motive, the jury could well have found that Farrar was

extremely angry over the fact that Staudt was again going to plant the field adjoining his (Farrar's) property in rice, and the testimony reflects that he twice said, "I know a way of stopping it." Staudt's testimony related other remarks made by Farrar on the way to the house, which indicated anger. While both men were drinking, it certainly was not established that Farrar was too drunk to form an intent to kill. In fact, appellant vigorously denied drunkenness, and detailed his version of all that had happened during the day up until the shooting. Farrar stated that after Staudt had made some belligerent remarks, including, "No two bit farmer is going to stand in my way,"[1] he grabbed appellant around the neck, and said, "Stay away from that woman or I am going to break your damn neck;" he broke away, and Staudt turned, went into the kitchen, and then started back. Appellant said he saw something in Staudt's hand, and he grabbed his gun, which was standing by the roll-away bed.[2] Farrar stated that the gun accidentally discharged. Accordingly, it seems that he somewhat combines two defenses, self-defense, and accidental shooting. Staudt was taken to the hospital by Goodwin, who had remained on the outside.

Sheriff Lonnie Cooper testified that Farrar did not mention any weapon held by the victim, and had said that there had not been any trouble. Dr. Paul Stroud, a physician of Jonesboro, who was present at the hospital when Staudt was taken there, testified that he found "a wound in the omentum, which is a fat pad over the intestines, protruding over here in the abdomen and some loops, some of the intestines were protruding through." The doctor performed surgery, and found that the abdominal wall was damaged; that the shot and wadding had lodged under the sacrum bone at the lower part of the abdomen and the bladder; the bladder was shredded and "torn up extensively." Puncture wounds were also discovered in the large bowel, and a portion was re-

[1] Appellant took this remark to refer to the drainage dispute.
[2] Farrar stated that the reason he kept the gun loaded was "on account of dogs getting in the geese."

moved. Small parts of the bladder were also removed. Dr. Stroud testified that the shot could have killed Staudt.

It was within the province of the jury to determine the true facts in the case, and certainly, there was substantial evidence to support the verdict. The facts and circumstances of the assault, as related by Staudt, indicated an intention by Farrar to kill the prosecuting witness, or to cause great bodily harm. The weapon used, a 12-gauge shotgun, and the extent of wounds on the body, together with the state of feeling existing between the parties prior to the difficulty, were all matters to be considered by the jury. *Davis* v. *State*, 206 Ark. 726, 177 S. W. 2d 190.

It is next contended that the court erred in permitting the state to introduce the shirt, pants, and underwear that had been worn by Staudt at the time of the assault. In a long line of cases, we have held that the introduction of these items, and others similar thereto, is within the sound discretion of the court, and certainly this evidence was helpful in indicating to the jury the location of the wounds, and was clearly relevant to the issue being tried.

It is also urged that the court erred in permitting Dr. Stroud to testify as to the nature of the wounds. Of course, the location of the wounds, and evidence relating to whether such wounds could have caused death are most pertinent to the charge of assault with intent to kill, and the testimony also could assist the jury in determining which version of the shooting was correct.

It is not exactly clear just what is meant by the last point raised by appellant. He calls it "impeachment of defendant." The appellant offered three character witnesses, who testified as to his general good character. The state questioned two of these witnesses relative to whether they had knowledge of a fight appellant en-

gaged in at the Boot Heel Cafe. Their answer was in the negative, but at any rate, there was no objection to the testimony at all. The state then called as a witness Willie G. Brown, brother-in-law of appellant. In making inquiry as to Farrar's reputation in the community, Brown was asked as to appellant's reputation for sobriety. The answer was, "Well, to my knowing, Booth [appellant] has drank right smart. * * * I would call him an alcoholic." Counsel for appellant objected, and the court sustained the objection. The witness subsequently said that he was not familiar with the general reputation of Farrar in the community. Of course, the objection was sustained, and the court accordingly disallowed the testimony, though had it been otherwise, the testimony would seem to have tied in with appellant's defense, heretofore mentioned, that Farrar was too drunk at the time of the shooting to form an intent to kill.

Finding no reversible error, and it appearing that appellant received a fair trial, the judgment is affirmed.