RALPH BURK SHADDOX *v.* STATE OF ARKANSAS

5291                                    418 S. W. 2d 780

Opinion delivered September 25, 1967

*Robert Brockman,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Ralph Burk Shaddox was charged with the offense of assault with intent to kill, the Information charging that Shaddox shot Johnny Younes on August 9, 1966, in Boone County, with the intention of killing Younes. On trial, the jury returned a verdict of guilty, and fixed appellant's punishment at five years imprisonment in the State Penitentiary. From the judgment so entered, Shaddox brings this appeal.

For reversal, it is first asserted that the evidence was insufficient to sustain a conviction for the offense alleged. We do not agree. Evidence on the part of the state was to the effect that Shaddox was indebted to Younes, who operated an automobile supply store in Boone County. On August 9, Younes was visiting at a service station operated by Clyde Loftin, when Shaddox drove into the station. Both men spoke, and Younes then inquired of Shaddox "why he hadn't been in to see me, and he knew what I meant because everytime I see someone who owes me and who is past due, I say why haven't you been in and he said he had it on him, then he said do you want to try to take it off me—those were the words he used." Younes testified that the words were spoken in an unfriendly manner, and that he stepped over to the front of appellant's car, and, opening the door, reached in for the purpose of complying with Shaddox's invitation, *i.e.,* to take the money "off him." Younes was not armed, and the witness testified that he had no intention of harming appellant. As he reached in, grabbing hold of appellant's shirt, Shaddox fired a pistol, striking Younes in his right chest. The victim stated that he said something to Shaddox to the effect that the latter had shot him, and he testified that appellant said, "Yes, I will kill you, too." Dr. Jean Gladden,

who removed the bullet, testified that if the shot had "been a little over the other way" the wound would have been fatal; that a large blood vessel was perforated in the lung, and that if Younes "had been very far away from a hospital, I think he would have died." Clyde Loftin testified:

"Ralph had brought me a jack, a big hydraulic jack, and I was going around the car to get the jack and I walked up on the right side of the car and Ralph told me the jack was between the seats and I was going behind the car, around to get the jack* * *

"I walked up to the right side of Ralph's car, that's when he told me the jack was there between the seats and I did look inside the car."

Loftin stated that he observed "a pistol laying in the front seat. Laying about the middle of the seat." Within seconds, he saw Younes reach into the car, and heard the report of the pistol. Shaddox testified that he thought Younes had cut him, and that he was only trying to scare the prosecuting witness. In *Farrar* v. *State*, 240 Ark. 447, 400 S. W. 2d 289, we said:

"It was within the province of the jury to determine the true facts in the case, and certainly, there was substantial evidence to support the verdict. The facts and circumstances of the assault, as related by Staudt, indicated an intention by Farrar to kill the prosecuting witness, or to cause great bodily harm. The weapon used, a 12-gauge shotgun, and the extent of wounds on the body, together with the state of feeling existing between the parties prior to the difficulty, were all matters to be considered by the jury. *Davis* v. *State*, 206 Ark. 726, 177 S. W. 2d 190."

Here, likewise, the jury was entitled to consider the state of feeling existing between the two men prior to the difficulty, the nature of the wound on the body, the

weapon used, and the fact that it was in the seat beside Shaddox, ready for instant use. The evidence was sufficient to sustain the conviction.

It is next asserted that the court erred in denying appellant's motion for mistrial due to the special prosecutor's manner of questioning Shaddox concerning alleged prior acts of misconduct by appellant. This point is well taken, and the error committed calls for reversal.

The transcript reflects a long line of questioning during cross-examination relative to convictions, including references to arrests. Ark. Stat. Ann. § 28-605 (Repl. 1962) permits evidence of former convictions of crime as a matter of going to the credibility of the weight to be given a defendant's testimony.[1] See also *Johnson* v. *State*, 236 Ark. 917, 370 S. W. 2d 610, and cases cited therein. However, the special prosecutor went far afield in this particular cross-examination. The prosecutor was evidently holding a "rap sheet"[2] in his hand, and several times made reference to this paper. On one occasion, Shaddox was asked if he had been in Albany, California, and the witness replied that he didn't remember being there, but "if you say I did, I was." The prosecutor then replied, "I don't say, I am reading from a paper that has been furnished me." Again, the prosecutor said:

"These notes here shows that Ralph Burk Shaddox, and gives the number of the case on June 17, 1953, while

[1]This is true, unless there is a statutory prohibition. For instance, see Ark. Stat. Ann. § 75-1012 (Repl. 1957), and our cases relative to this section.

[2]When a man is arrested and charged with crime in this state, under the usual procedure, he is fingerprinted, and a copy of the prints sent to the Department of Justice in Washington. That department then sends back to the arresting officers a copy of the defendant's record, if any, which shows both previous arrests and convictions. This is sometimes referred to as a "rap sheet." It is not clear in the instant case whether the special prosecutor was actually holding a copy of appellant's record in his hand, or whether he had taken notes from the record, and was using those notes.

you were in the Public Health Service Hospital at Lexington, Kentucky you were charged with unlawfully mailing narcotics and the notes show you were sentenced to two years in the penitentiary.''

Appellant's attorney objected, and the court replied, ''Mr. Shouse, don't refer to the amount of the sentence, just was he convicted.'' Defense counsel then moved for a mistrial, and the motion was denied. We think the court erred in not granting this motion. The reference to the ''notes'' undoubtedly could influence members of the jury to feel that the state's attorney was holding irrefutable evidence of previous convictions, and could well have been prejudicial. We commented on a similar matter in *Shroeder* v. *Johnson,* 234 Ark. 443, 352 S. W. 2d 570. This was a civil case, but the principle likewise applies here, if not more so. In that case, Shroeder denied using a room in his hotel for immoral purposes, and counsel then stated, ''Mr. Shroeder, do you want to keep for your own information this rap sheet here. Just stick it in your pocket.'' In reversing the case because of this occurrence, we stated:

''In the case under consideration, as in most situations of this nature, we cannot say with certainty that the jurors were prejudiced by the reference to the 'rap sheet,' but we are less sure that they were not. Definitely the manner in which the reference was made was improper, and it left open to the jury a broad field of speculation as to appellant's character and possibly his criminal record. The admonition of the court did not tell the jury what and to whom the 'rap sheet' referred, and if it had done so the prejudice probably would have been even greater.''

Here, of course, the paper did tell ''what and to whom the 'rap sheet' referred,'' and we agree that the prejudice may well have been much greater than in *Shroeder, supra.* Not only that, but in the cited case, the court did admonish the jury to disregard the reference to the paper, though we held that the admonition

was insufficient to cure the prejudice that had resulted.[3] Here, no such admonition was given. In addition, it will be quickly observed that the prosecutor's statement was, in effect, testimony—unsworn—and hearsay. The court should have granted the motion for a mistrial.

Other errors complained of are not likely to arise again in another trial.

Because of the error herein discussed, the judgment is reversed, and the cause remanded to the Boone Circuit Court.

---

[3]In *Shroeder*, this court quoted a Kansas case, as follows: "There is, however, a class of cases which present argument and remarks so flagrantly prejudicial, or counsel may be so persistent in their impropriety, that the commendable efforts of the trial judge to eradicate the evil effects of them will be unavailing. In such event, then, a new trial is the only way to remove the prejudice, notwithstanding the judge may have reprimanded, or even fined, the offending attorney and positively and emphatically instructed the jury to disregard the prejudicial statements."