Charles Lee WHITE *v.* STATE of Arkansas

CR 86-34                                                   717 S.W.2d 784

Supreme Court of Arkansas
Opinion delivered October 20, 1986
[Rehearing denied November 17, 1986.*]

*Purtle, J., would grant rehearing.

132

*Goodwin, Hamilton & Moore*, by: *Donis B. Hamilton*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. ▉ The primary issue presented in this appeal is whether voluntary intoxication constitutes a defense to second degree murder, as it negates the existence of the requisite intent. We hold that voluntary intoxication is no longer available as a defense to criminal prosecutions, overruling our previous decisions to the contrary and those of the Arkansas Court of Appeals.

The appellant, Charles Lee White, was charged with first degree murder for the January 15, 1985, beating death of his wife, Joyce Cummings White. He was also charged with being an habitual offender. A jury convicted White of second degree murder and he was sentenced to 40 years imprisonment. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(b).

## I. *VOLUNTARY INTOXICATION*

Appellant argues on appeal that the trial court erred by failing to give his requested instruction on the defense of

voluntary intoxication as set out in AMI Criminal, 4005.1, and by instructing the jury that voluntary intoxication was not a defense to the crime of second degree murder. The underlying question concerns the very existence of the defense of voluntary intoxication in light of an act of the Arkansas Legislature designed to eliminate the defense of self-induced or voluntary intoxication.

We recognized in *Mosier* v. *State*, 285 Ark. 67, 684 S.W.2d 810 (1985) that "some confusion surrounds the defense of voluntary intoxication" and we stated that we might re-examine our position in the appropriate case. As the issue is squarely presented in this case, we now take the opportunity to resolve the confusion.

At common law, evidence of voluntary intoxication, while no excuse for a crime, could be admitted to show the defendant was incapable of forming the specific intent necessary for the crime. *Wood* v. *State*, 34 Ark. 341 (1879). *See also Olles & Anderson* v. *State*, 260 Ark. 571, 542 S.W.2d 755 (1976). With the adoption of the 1976 Criminal Code, the statutory defense of voluntary intoxication was created, fashioned in part on common law. Act 280 of 1975, codified at Ark. Stat. Ann. § 41-207 provided: "[s]elf-induced intoxication is an affirmative defense to a prosecution if it negates the existence of a purposeful or knowing mental state".

Two years later, with Act 101 of 1977, the Arkansas Legislature amended § 41-207 to delete this subsection. Act 101 was entitled "An Act to. . . Eliminate Self-Induced Intoxication as a Defense to Criminal Prosecution. . . ."

The Act included an emergency clause which read:

> It is hereby found and determined by the General Assembly that the defense of voluntary intoxication is detrimental to the welfare and safety of the citizens of this State in that criminals are at times excused from the consequences of their criminal acts merely because of their voluntary intoxication and that this Act is necessary to eliminate the defense of self-induced or voluntary intoxication. . . .

This court first interpreted the Legislature's action in eliminating voluntary intoxication as a defense in *Varnedare* v. *State*, 264 Ark. 596, 573 S.W.2d 57 (1978) where we held:

By amending § 41-207 to remove self-induced intoxi-
cation as a statutory defense, the legislature, in effect,
reinstated any prior Arkansas common law on the sub-
ject . . .

. . .

Therefore, under either the statutory provisions of § 41-
207, as the parties involved thought them to be, or under
the case law, as expressed in *Olles & Anderson* v. *State*, the
defense of self-induced intoxication was available to the
appellant, if it rendered him incapable of forming the
intent that was a necessary element of the crime.

This viewpoint has been consistently followed by this court.
*See Morgan* v. *State*, 273 Ark. 252, 618 S.W.2d 161 (1981);
*Harmon* v. *State*, 277 Ark. 265, 641 S.W.2d 21 (1982).

The Arkansas Court of Appeals, in considering voluntary
intoxication as a defense, has drawn a distinction between crimes
committed "knowingly" and crimes committed "purposefully."
*Bowen* v. *State*, 268 Ark. 1088, 598 S.W.2d 447 (Ark. App.
1980). In *Bowen* the court stated that a crime with "knowingly"
as the requisite mental state does not require a specific intent, and
the common law defense of voluntary intoxication is only availa-
ble as a defense to specific intent crimes. A crime requiring proof
that it was committed "purposefully", however, is a specific
intent crime, according to the court. *Accord: Menard* v. *State*, 16
Ark. App. 219, 699 S.W.2d 412 (1985).

Here, the trial court followed the reasoning of the court of
appeals in refusing to recognize voluntary intoxication as a
defense to second degree murder because the state is just required
to prove that the crime was committed "knowingly."[1] Ark. Stat.
Ann. § 41-1503 (Repl. 1977).

After re-evaluating our cases and those of the Court of
Appeals, we are now convinced that our court was wrong in

---

[1] Section 41-1503 also provides that a person commits second degree murder if they
act with the "purpose" of causing death or serious physical injury. The trial court,
however, based their decision on the fact that a "knowing" state of mind was all that was
*required*, not all that was applicable.

*Varnedare* when we held that the elimination of § 41-207 reinstated the common law defense of voluntary intoxication.

■ It is a principle of statutory construction that a statute will not be construed as overruling a principle of common law, *"unless it is made plain by the act that such a change in the established law is intended."* (emphasis added) *Starkey Const., Inc.* v. *Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509 (1970). In *Barrentine and Ives* v. *State*, 194 Ark. 501, 108 S.W.2d 784 (1937) we said:

> It has long been the rule in this state that 'A statute will not be taken in derogation of the common law unless the act itself shows such to have been the intention and object of the legislature.'

It is also a general principle "that the repeal of a statute which abrogates the common law operates to reinstate the common-law rule, unless it appears that the legislature did not intend such reinstatement." 73 Am Jur 2d *Statutes* § 384, pp. 505-06 (1974); *Johnson* v. *Olson*, 142 P. 256 (Kan. 1914). Furthermore, the courts have no power to perpetuate a rule of law which the legislature has repealed. *Id.*; Singer, *Statutes & Statutory Construction*, § 23.07 p. 326 (4th ed. 1985); *State* v. *Tennyson*, 2 N.W.2d 833 (Minn. 1942).

In *Patapsco Guano Co.* v. *North Carolina Board of Agriculture*, 171 U.S. 345 (1898) the U.S. Supreme Court considered an act of the North Carolina Legislature requiring inspection of fertilizers and fertilizing materials, and payment of the costs of the inspection. The argument was made that certain earlier acts were revived by the repeal of other statutes but the Court disagreed, holding:

> It is impossible to impute to the general assembly the intention, in repealing parts of the code which had been declared unconstitutional, to revive earlier laws which might render the amended law liable to the same objections.

The intention of the Arkansas Legislature in repealing § 41-207(a) is apparent from the title and emergency clause of the act: they intended to eliminate the defense of self-induced intoxication in criminal prosecutions. By reinstating the common law

rule, which permitted voluntary intoxication as a defense to crimes requiring a specific intent, this court has perpetuated a rule of law which the legislature effectively repealed. We now reverse our position and declare voluntary intoxication is not a defense in criminal prosecutions. Likewise, the distinction made by the court of appeals between crimes committed with a "knowing" mental state and crimes committed with a "purposeful" mental state is of no consequence because this defense is no longer available.

Since the error complained of here is that the trial court failed to instruct the jury that voluntary intoxication is a defense to second degree murder, we affirm the trial court's holding.

The appellant raises several other issues in this appeal including the admissibility and voluntariness of a statement he gave to police officers; the presentation of that statement at the trial; the admission into evidence of certain items; and the court's failure to appoint a psychiatrist to examine him. They are all without merit.

## II. *APPELLANT'S CONFESSION*

The appellant contends that his confession was not voluntarily and intelligently made and therefore should not have been admitted.

We independently review the totality of the circumstances surrounding a confession to determine whether an accused knowingly, voluntarily and intelligently waived his constitutional rights. *Orr* v. *State*, 288 Ark. 118, 703 S.W.2d 438 (1986). Among the factors considered in determining the validity of a confession are the age, education, and intelligence of the accused, the advice or lack of advice of his constitutional rights, the length of detention, the repeated or prolonged nature of the questioning, or the use of mental or physical punishment. *Id.* We do not reverse the trial court's holding unless it is clearly against a preponderance of the evidence. *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981).

As to the enumerated factors, White was 47 and illiterate. He was advised of his rights twice; he was not detained for any length of time prior to confessing, but rather began making statements immediately after officers arrived at his

home; and there was no allegation that the questioning was prolonged or that there was mental or physical punishment. There was conflicting testimony about whether White was still intoxicated when he gave his statement. Conflicts in testimony are for the trial court to resolve and we defer to the superior position of the trial judge in that regard. *Harvey* v. *State, supra.*

■ Based on the totality of the circumstances, the trial court's decision to admit the confession was not against a preponderance of the evidence.

In a related attack on the admissibility of his confession, appellant contends he consistently told officers he could not recall what happened after he and his wife became intoxicated. In response to repeated questions about what happened, appellant made several statements that he "guessed" he hit and kicked his wife, but he could not remember. Appellant claims these statements were not based on any recollection but were rather speculation and were produced by leading questions from the officers.

■ Although the officers did ask leading questions during the interrogation, the appellant displayed an independent recollection of the events. He admitted that he and his wife had gotten into a fight after the two of them drank two fifths of whiskey, and that he hit and kicked her and, specifically, that he remembered hitting her in the jaw and making her lip bleed. Also, when the appellant awakened the next morning and discovered that his wife, who was in bed with him, was dead, he told his landlord to call the sheriff and an ambulance because he had killed his wife. This argument is without merit.

In appellant's final attack on the admissibility of his confession, he objects to a pretrial ruling that a reference in his statement to a prior fight between him and the victim was admissible. That portion of the statement provided:

Q: Did she ever tell you that you hurt her real bad?

A: I, she didn't tell me that I hurt her last night before we got into a fight she told me I hurt in here real bad she was hurting so I asked her if she wanted to go to Jonesboro to the Emergency Room because we owed so much down here at the hospital she said yeah I'll

take her over there that morning at Jonesboro over there at the Emergency Room she had four ribs broke and one of them was sticking in her lung over there and it had been draining or leaking or something I forget now what he said.

Q: The time that you had, this was, this was a fight that you have previous to the fight last night, right?

A: Yes.

Q: You had this some weeks ago?

A: Yes.

. . . .

Q: During that fight you had hit her and broke some of her ribs?

A: Yes sir.

Q: And one of them was severe enough that it had punctured a lung for?

A: Hum-ah.

Q: Ok and you took her to the hospital in Jonesboro then?

A: Yes sir I went to Emergency Room.

■ The trial court held that testimony by the record clerks at the hospitals visited by the victim would not be admitted, but the appellant's confession concerning the prior beating would be admitted.

Uniform R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible *for other purposes*, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident (emphasis added).

■ Although in the past we have approached the question of admissibility under Rule 404(b) by the "fairly mechanical approach" of searching for one of the listed exceptions, *Price* v.

*State*, 267 Ark. 1172, 599 S.W.2d 394 (Ark. App. 1980); *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954), we think the better practice and the one intended by the drafters of Rule 404(b) is to consider the list of exceptions to be exemplary only and not exhaustive. Accordingly, we find the testimony about the prior beating admissible so long as it is for some purpose other than to prove the character of the person in order to show he acted in conformity therewith.

■ Rule 404(b) permits introduction of testimony of other criminal activity if it is "independently relevant to the main issue —relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal —then evidence of that conduct may be admissible with a proper cautionary instruction by the court." *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980), *quoting Alford* v. *State, supra.* Inasmuch as we agree with the trial court that the testimony was admissible, the appellant would have been entitled to a limiting instruction on the purpose for which the testimony was to be considered. Because such an instruction was not requested, appellant cannot now claim error. *Miller* v. *State*, 269 Ark. 341, 605 S.W.2d 430 (1980).

The fact that appellant's wife was the victim in both incidents is the basis for its admissibility as it reflects a specific propensity to commit the particular sort of crime in question with the same person. In this regard, the situation is analogous to child abuse and incest cases where we have permitted evidence of prior similar acts with the same child or other children in the household because, as here, they show a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship. Our reasoning in those cases provides:

> The testimony in question was not introduced for the purpose of proving a substantive crime, but to show the relation and familiarity of the parties, their disposition and antecedent conduct towards each other, and as corroborative of the testimony of the prosecuting witness touching the crime charged in the indictment. It showed the intimacy of the parties, and was admissible as characterizing the previous acts and conduct of the parties in regard to the particular offense charged.

*Johnson* v. *State*, 288 Ark. 101, 702 S.W.2d 2 (1986), *quoting Williams* v. *State*, 103 Ark. 70, 146 S.W. 471 (1912). *See also, Limber* v. *State*, 264 Ark. 479, 572 S.W.2d 402 (1978); *Van Sickle* v. *State*, 16 Ark. App. 143, 698 S.W.2d 308 (1985); and *Collins* v. *State*, 11 Ark. App. 282, 669 S.W.2d 505 (1984).

The statement by appellant that, approximately two weeks prior to her death he severely beat his wife, is probative of the appellant's participation in the crime charged and is therefore admissible under Rule 404(b). The only remaining question is whether or not this evidence should have been excluded because the prejudice brought about by exposition of this other offense was not sufficiently balanced by its probative value. *See* Rule 403. We hold that the probative value of the evidence outweighed any prejudice.

## III. *PRESENTATION OF CONFESSION*

The appellant claims it was error for the court to permit Lieutenant Allan Hicks, of the Greene County Sheriff's Department, to summarize his confession for the jury prior to the playing of the recorded statement. Appellant objects to this as "double dipping" and maintains that Hicks embellished the statement and created a danger of unfair prejudice which outweighed the probative value of the evidence.

It is within the sound, judicial discretion of the trial court to limit the introduction of cumulative testimony and this discretion is not controlled unless it has been manifestly abused. *McMillan* v. *State*, 229 Ark. 249, 314 S.W.2d 483 (1958), *quoting Sheppard* v. *State*, 120 Ark. 160, 179 S.W. 168 (1915). In *Beed* v. *State*, 271 Ark. 526, 609 S.W.2d 898 (1980), we explained the test to be used by the trial judge in deciding whether to exclude cumulative evidence:

> The first consideration for a trial judge is whether evidence which makes the existence of a fact more probable creates a danger of unfair prejudice. The secondary consideration is whether the danger of the unfair prejudice substantially outweighs the probative value of the evidence.

It was unquestionably error on the part of the trial court to permit Hicks to summarize the confession when the actual confession was about to be played for the jury and we

strongly caution against such practice. It was inexcusable to permit the officer to paraphrase the statement and embellish the appellant's words. The embellishment complained of occurred when Hicks quoted appellant as saying he beat his wife "extremely bad", when no such statement was made. Lt. Hicks also elaborated on the specific blows that were allegedly struck by appellant. Standing alone, such comments could have prejudiced the appellant. However, the jury was apprised of the embellishment by defense counsel in closing argument and heard a recording of the appellant's confession, enabling them to assess the accuracy of Hicks' comments for themselves. For these reasons, we hold that the trial court's error did not substantially affect the fairness of the trial, and was, under the circumstances, harmless. In so holding it should be noted that nothing about Hicks' testimony conflicts with the state medical examiner's findings as to the injuries sustained by the victim. This fact, coupled with appellant's admission that he beat her that night, lessened the likelihood of any *unfair* prejudice resulting from Hicks' improper comments.

## IV. *ADMISSION OF EVIDENCE*

The appellant maintains that six items of evidence were erroneously admitted in light of a break in the chain of custody of those items. Hicks testified that he gathered the items, which included a pillow, shirt, pillow cases, and sheets, put them in a bag, and sealed it with evidence tape. He gave the items to a Mr. Pervis, an employee of the medical examiner's office. Hicks identified the items when they were admitted. Mr. Edward Vollman, the forensic serologist who did the testing, stated that when he received these items, the bag was opened and he therefore could not ensure that no tampering had occurred.

■ The purpose of establishing the chain of custody is to prevent the introduction of evidence which is not authentic. *Wilson* v. *State*, 277 Ark. 43, 639 S.W.2d 45 (1982). To prove authenticity, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.* We explained in *Munnerlyn* v. *State*, 264 Ark. 928, 576 S.W.2d 714 (1979):

To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence

comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. (citations omitted)

██ When an object is subject to positive identification, proof of the chain of custody need not be as conclusive as it should be with respect to interchangeable items, such as blood samples or drugs. *Brewer* v. *State*, 261 Ark. 732, 551 S.W.2d 218 (1977). The effect of minor discrepancies in the chain of custody are for the trial court to weigh. *Id.*

Most recently in *Douglas* v. *State*, 286 Ark. 296, 692 S.W.2d 217 (1985), we explained that where there is little likelihood that an exhibit has been tampered with it may be admitted. We then quoted *Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978) as follows:

It is not necessary that the . . . [state] eliminate every possibility of tampering, if the trial court is satisfied that in reasonable probability the evidence had not been tampered with. In such matters, the trial judge is accorded some discretion, in the absence of evidence indicating tampering with the evidence, and we will not reverse the trial judge's ruling unless we find an abuse of discretion.

*See also Wickliffe & Scott* v. *State*, 258 Ark. 544, 527 S.W.2d 640 (1975).

██ Here, the items in question were all identified by Hicks and Vollman and there was no actual allegation of tampering. The chain of custody was sufficient.

The appellant also objects to the admission of physical evidence on which there were human blood stains not capable of being typed. The evidence included a pair of blue jeans, a shirt, tissue paper, glass, a towel, and a coat. Since the blood could not be typed it could not be traced to the victim or to the appellant, making it irrelevant according to appellant.

We have long held that the introduction of bloodstained clothing and similar items worn by a victim is permissible as within the sound discretion of the court and is relevant when it is helpful in indicating to a jury the location of the wounds. *Farrar* v. *State*, 240 Ark. 447, 400 S.W.2d 289 (1966), *Bracey* v. *State*, 231 Ark. 647, 331 S.W.2d 870 (1960); *Bly* v. *State*, 267 Ark. 613, 593 S.W.2d 450 (1980).

In *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980), a rape case, the state was allowed to introduce underwear belonging to the appellant, together with testimony that there were human blood stains inside the front fly area of the underwear. This was in spite of the fact that no attempt was made to determine when or how the blood got there or from whom it had come.

The appellant in that case contended the clothing and stains were not in any way related to any consequential fact or material proposition at issue in the case. This court disagreed, finding the evidence corroborated other testimony and was relevant in spite of the fact there was no evidence the blood was the victim's. We further found appellant's argument went to the weight of the evidence rather than to its relevancy.

Similarly, the presence of blood on the clothing and bed linens corroborates the medical examiner's report of the victim's injuries and the appellant's confession. It was relevant and admissible.

## V. *APPOINTMENT OF PSYCHIATRIST*

The appellant maintains the court erred by refusing to retain for him at state expense a private psychiatrist.

The appellant first filed a motion asking to be committed to the state hospital for a period of observation because he might be entering a plea of not guilty by reason of insanity. That motion was granted and appellant was evaluated by a staff psychiatrist at the George Jackson Community Mental Health Center in Jonesboro. The diagnosis was alcohol abuse, continuous; and anti-social personality disorder. The psychiatrist found appellant capable of assisting his attorney in his defense and recommended a more extensive evaluation at the State Hospital.

Appellant filed a second petition requesting a psychiatrist to aid in determining whether an insanity defense was viable. The appellant was then evaluated at the State Hospital and the supervising forensic psychologist there diagnosed appellant as having a continuing problem with alcohol abuse and an anti-social personality disorder. The report said:

> Defendant appears to be aware of the nature of the charges and proceedings taken against him. He is capable of cooperating effectively with an attorney in the preparation of his defense.

> At the time of the commission of the alleged offense, defendant did not lack capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

When the appellant still requested that a private psychiatrist be retained, the court found he failed to make a threshold showing that the defense of insanity would be a serious issue at trial and that the state is not required to provide appellant access to a psychiatrist's assistance for his defense of voluntary intoxication.

A defendant claiming insanity is required to be examined at the state hospital or at a regional mental health facility pursuant to Ark. Stat. Ann. § 43-1301 (Supp. 1985). Appellant has been examined at both institutions. Since the state did furnish the services of the staffs of two mental health institutions, the state is not required to furnish expenses for appellant to shop from doctor to doctor until he finds one who considers him mentally incompetent. *Andrews* v. *State*, 265 Ark. 390, 578 S.W.2d 585 (1979); *see also Finney* v. *State*, 253 Ga. 346, 320 S.E.2d 147 (1984); *Graham* v. *State*, 441 N.E.2d 1348 (Ind. 1982); and *State* v. *Aguilar*, 325 N.W.2d 100 (Iowa 1982).

Appellant cites *Ake* v. *Oklahoma*, ___ U.S. ___, 105 S. Ct. 1087 (1985) as supporting his position, but that case holds that when an indigent defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at the trial, the state must at a minimum assure the defendant access to a competent psychiatrist who will conduct appropriate examinations and assist in the evaluation, preparation and presentation of the defense. The Supreme Court went on to say:

This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision of how to implement this right.

Although the defense of voluntary intoxication and not the defense of insanity was ultimately raised by appellant, the diagnoses indicate that appellant's problem with alcohol abuse and his intoxication at the time the crime were committed were taken into account by the examining mental health personnel. The appellant's request for a third examination was properly denied.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion because it attempts to legislate on the matter of voluntary intoxication, to overrule prior case law, and to scramble the law on the introduction of prior bad acts to prove the present case.

Voluntary intoxication was designated as an affirmative defense in the Arkansas Criminal Code which became effective in 1976. The majority opinion correctly quotes the Code and Act 101 of 1977, which eliminated the affirmative defense of voluntary intoxication. The result of this action is where I most strongly disagree with the opinion. Act 101 in part reads as follows:

Section 1. Section 207 of Act 280 of 1975, the same being Arkansas Statutes Annotated § 41-207, is hereby *amended* to read as follows:

Section 207.(1) Intoxication that is not self-induced is an affirmative defense. . . .

(2) (a) "intoxication" means. . . .

(b) "self-induced intoxication" means intoxication caused by a substance which the actor knowingly introduces into

his body, the tendency of which to cause intoxication he knows or ought to know.

Section 2. All laws and parts of laws in conflict with this act are hereby repealed.

Section 3. [The emergency clause which is quoted in the majority opinion.] [Emphasis added.]

Simply stated, Act 101 of 1977 deleted the affirmative defense of voluntary intoxication established by Act 280 of 1975. The question thus presented is what is the effect of the repeal. Technically, the legislative action was not a repeal, but rather it was an amendment. The text clearly states that Act 280 "is hereby amended to read as follows." Voluntary intoxication was simply removed from the statute. What is left in the statute to relate to self-induced intoxication? Only the definition. The part which the 1977 act excised from the Criminal Code (Act 280 of 1975) read as follows:

Section 207.(1) Self-induced intoxication is an affirmative defense to a prosecution if it negates the existence of a purposeful or knowing mental state.

The foregoing section was simply removed from the original act and the remaining sections were renumbered.

The majority has construed a statute which is clear and unambiguous. The basic and fundamental rule of statutory construction is that we give the words of a statute their usual and ordinary meaning. If there is no ambiguity, we give a statute effect just as it reads. *Chandler* v. *Perry-Casa Public Schools*, 286 Ark. 170, 690 S.W.2d 349 (1985); *City of North Little Rock* v. *Montgomery*, 261 Ark. 16, 546 S.W.2d 154 (1977). The present statute clearly and unequivocally states that intoxication which is not self-induced is an affirmative defense. There is not a word, or group of words, in the statute which even remotely indicates that self-induced intoxication is or is not any form of defense. In other words, the legislature removed from the law a single provision of its prior enactment. There is nothing to construe. The intent of the legislature is not to be considered unless there is ambiguity.

The great problem created by the majority opinion is that it

establishes a pool of unwritten law. Hereafter if the court desires a particular result, it need only find that the legislature, by repeal, intended to achieve a different result.

I think this Court was correct in *Varnedare* v. *State*, 264 Ark. 596, 573 S.W.2d 57 (1978), where we stated: "[b]y amending § 41-207 to remove self-induced intoxication as a statutory defense, the legislature, in effect, reinstated any prior Arkansas common law on the subject." This is the only logical result so far as I am concerned. The present law, in my opinion, is the same as existed prior to any legislative enactment. Therefore, from my viewpoint, the giving of the instruction that voluntary intoxication is not a defense was prejudicial error, as is all error in criminal cases, unless it is later determined to be nonprejudicial.

I will now discuss what I perceive as errors concerning the "confession." The questions and answers set out verbatim in the majority opinion clearly show that the appellant was still drunk at the time of the so-called confession. A suspect who is intoxicated during an interrogation cannot possibly knowingly, voluntarily, and intelligently waive his constitutional rights. See *Orr* v. *State*, 288 Ark. 118, 703 S.W.2d 438 (1986). The "confession" is impossible to follow as it frequently relates to a prior incident which occurred several weeks earlier, in which he broke his wife's ribs. To compound the error the court allowed an officer to inaccurately summarize the statement before the statement itself was presented to the jury.

The majority addresses the admissibility of that part of the statement concerning the previous criminal act in several ways. First it states, "[a]ccordingly, we find the testimony about the prior beating admissible so long as it is for some purpose other than to prove the character of the person in order to show he acted in conformity therewith." The opinion continues by stating that a prior bad act is admissible pursuant to A.R.E. Rule 404(b) "if it is 'independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court.' " *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980), quoting *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). The opinion further argues that "[t]he fact that the

appellant's wife was the victim in both incidents is the basis for its admissibility as it reflects a specific propensity to commit the particular sort of crime in question." The majority cites as analogous our decisions in child abuse and incest cases where we have permitted evidence of prior similar acts with the same child or other children in the household "because, as here, they show a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship." Finally the Court concludes that the prior act "is probative of the appellant's participation in the crime charged and is therefore admissible under Rule 404(b)." The opinion then holds that A.R.E. Rule 403 is the real test to be applied and that the probative value of this evidence outweighed any prejudice.

The relationship of husband and wife, by definition, shows intimacy. The intimacy of the parties was not an issue in this trial. The prior bad act, therefore, cannot be said to have been introduced for the purpose of showing intimacy. This evidence simply does not fall within the exception to the general rule in cases of carnal abuse and incest. See *Alford, supra*, at 335.

My interpretation of the majority opinion is that it overrules *Alford* as to the fundamental rule of exclusion which forbids the prosecution from proving the commission of one crime by proof of the commission of another. In *Alford* we stated:

> The rule itself has been announced in some fifty decisions of this court and is so familiar that we need not discuss at length the reasons for its acceptance by every English and American court. Basically, the rule rests upon that spirit of fair play which, perhaps more than anything else, distinguishes Anglo-American law from the jurisprudence of other nations. Our theory is simply that a finding of guilt should rest upon proof, beyond a reasonable doubt, that the accused committed the exact offense for which he is being tried. We do not permit the State to bolster its appeal to the jury by proof of prior *convictions*, with their conclusive presumption of verity, and still less is there reason to allow the jury to be prejudiced by mere accusations of earlier misconduct on the part of the defendant. . . .
>
> What has happened is that the emphasis has shifted from evidence *relevant* to prove intent to evidence *offered for the*

*purpose* of proving intent, by showing that the defendant is a bad man. If this transfer of emphasis is permitted the exclusionary rule has lost its meaning. [Emphasis in original.]

In prior decisions we have held that it is the general rule that proof of prior bad acts is never admitted when its only relevance is to show that the defendant is a man of bad character. The evidence of the first beating was not relevant to prove intent, but rather was offered for the purpose of proving intent, by showing that the defendant was a bad man.

The issue at trial was not whether he had beaten his wife before, but rather whether he intended to murder her. The defendant admitted beating his wife, although he denied any intent to kill her. The fact of the first beating might have been relevant to prove a second beating, but this evidence was in no respect relevant to establish any intent to murder. The evidence of the first beating should have been excluded because, clearly, its prejudicial effect substantially outweighed any probative value on the issue of intent. See A.R.E. Rule 403.

I would reverse and remand for a new trial.