RAYMOND R. ABRAMSON, Judge
A Crawford County jury convicted appellant, Richard Louis Bertrand, of raping his then seven-year-old step-granddaughter, and he was sentenced to 25 years in the Arkansas Department of Correction. On appeal, Bertrand asserts that his Sixth Amendment right to confront his accuser was violated when the trial court erected a screen and that the trial court abused its discretion by admitting the victim's bloodstained underwear into evidence. For the following reasons, we affirm.
At the trial, the court allowed the then eight-year-old victim to testify behind a screen. The screen was placed in front of Bertrand and prevented the victim from being able to see him while she testified but allowed him to see an outline of her form while sitting in the witness chair. Bertrand argues that his Sixth Amendment right to confront the witnesses against him was violated when the trial court, without making the findings required by Maryland v. Craig , 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), allowed the testimony to occur. In Craig , the Supreme Court of the United States held that the right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where the trial court makes a case-specific finding that the denial of such confrontation is necessary to further an important public policy, such as protecting a child witness from trauma, and only where the reliability of the testimony is otherwise assured. Id.
The two-part test established in Craig applies only when a criminal defendant has been deprived of the constitutional right to a face-to-face confrontation with the witnesses against him or her. Id. Bertrand argues that he has been deprived of his constitutional right to a face-to-face confrontation with his accuser. The record shows that considerable discussion occurred between counsel and the trial court regarding the screen at issue. The screen was described as one that would be placed in front of the defendant, on the desktop of counsel table. It was three feet tall and four feet wide. It was a translucent screen through which shadows could be seen, but a direct view between the victim and the defendant was prohibited. The form of the individual sitting in the witness chair could be seen, but details or a clear line of sight were obstructed.
The circuit court made no finding that the denial of the right of confrontation was necessary to further an important public policy. The court simply stated that there was a "young victim here that is seven or eight years of age. I think it's probably appropriate under those circumstances." There was no finding that the child witness needed to be protected from a trauma or findings of other public-policy protections. While we agree with Bertrand that this was error, we hold under the facts of this case that the error was harmless and therefore affirm.
Confrontation Clause errors are subject to harmless-error analysis, and the *418 analysis of whether a limitation on face-to-face confrontation is harmless must "be determined on the basis of the remaining evidence[ ]" in the case. Coy v. Iowa , 487 U.S. 1012, 1022, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). In the instant case, the evidence overwhelmingly established Bertrand's guilt, and thus, any error was harmless.
Bertrand's wife, who is the victim's grandmother, testified that on the night of December 26, 2015, the victim and her younger sister were spending the night with Bertrand and her. Late in the evening, as the victim was sitting in Bertrand's lap on the couch watching a movie, the grandmother heard from another room the victim "scream" in pain. The next day, when the victim was riding home with her mother, she told her mother that she had something "disgusting" in her "panties[,]" which she had worn the entire time she stayed with Bertrand and her grandmother. When they arrived home, her mother discovered blood in the victim's underwear, prompting her to contact law enforcement.
As a result of that contact, the victim's mother took her to Hamilton House Child and Family Safety Center on December 27, 2015. A sexual-assault nurse examiner, Malea McCormick, conducted a physical examination of the victim. In her report, she noted that the victim had informed her mother that "A.O. touched her girl parts." In the report, Bertrand was identified as the "A.O.," or the "Alleged Offender." McCormick testified that the victim had a recent bruise of her hymen from the 8 to the 10 o'clock position caused by a penetrating trauma. McCormick specifically stated that the penetration was beyond the labia majora and labia minora and that touching the hymen of prepubertal girls is "pretty painful" and could cause them to scream out in pain.
As part of her examination, McCormick collected the victim's underwear and took swabs from her labia majora. The Chief Forensic DNA Analyst from the Arkansas State Crime Laboratory explained that standard DNA testing, which can link a sample to a specific individual, revealed only female DNA from the swabs and tape lifts from the underwear. This result can happen, she noted, because the female DNA in samples from female genital areas and female underwear tends to mask male DNA. In such circumstances, Y STR testing can be done, which ignores the female DNA, but can help potentially identify any foreign male DNA. The only limitation in Y STR testing is that it can only go to a paternal line (i.e., fathers and sons; grandfathers, fathers, and sons all have the potential of having the same Y STR profile).
Here, Y STR testing revealed a match between Bertrand's DNA and the male DNA found in the victim's swabs and tape lifts from her underwear, meaning that neither Bertrand nor any of his paternal male relatives could be excluded as the source of the DNA in the swabs and the tape lifts. Evidence adduced at trial indicated that none of Bertrand's male relatives were present in the house either the day of the incident or the next day.
While at Hamilton House, the victim also was interviewed by Marilyn Sanders, a forensic interviewer. Among other things, the victim told Sanders that, while Bertrand put his hands in her underwear and outside of her "girl parts," he did not put the skin of his hand on them or his fingers inside of them. The victim also told Sanders that, when she got off the couch, she saw Bertrand's "boy parts" and that he was naked. She said that he told her not to tell anyone and that she was scared that she would be in trouble if she did. According to Sanders, the victim was very nervous during the interview and was trying *419 hard not to cry. When questioned by police, Bertrand neither admitted nor denied raping the victim.
Absent the testimony of the victim, then, the evidence at trial established that the victim reported to her mother that Bertrand had touched her "girl parts." Additional evidence established that the victim cried out in pain while alone with Bertrand, she had penetrating trauma to her hymen and what appeared to be bloodstains in her underwear shortly thereafter, and there was DNA on her labia majora and her underwear consistent with Bertrand's paternal lineage. Because any error in allowing the victim to testify through a screen was harmless, we reject Bertrand's claim of a reversible Confrontation Clause violation.
Bertrand's second argument on appeal is that the trial court committed reversible error when it admitted the victim's bloodstained underwear into evidence over his objection pursuant to Rule 403 of the Arkansas Rules of Evidence. He claims that the underwear was not relevant to any issue in the case because the blood in it was not proved to be the victim's and because the prosecution was able to otherwise admit evidence of the testing of the underwear without having to admit the underwear itself, which only served to inflame the jury.
Rule 403 of the Arkansas Rules of Evidence provides, in part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" (Emphasis added.) The balancing mandated by the Rule is left to the sound discretion of the trial court, and its determination under the Rule will not be reversed absent a showing of manifest abuse. E.g. , Lard v. State , 2014 Ark. 1, at 7, 431 S.W.3d 249, 258, cert. denied , --- U.S. ----, 135 S.Ct. 76, 190 L.Ed.2d 67 (2014).
Abuse of discretion is a "high threshold" that does not simply require a showing of error, but, rather, a showing that the trial court's decision was "arbitrary and groundless." Bell v. State , 2010 Ark. App. 813, at 5, 379 S.W.3d 748, 750. Our supreme court has "long held that the introduction of bloodstained clothing and similar items worn by a victim is permissible[.]" White v. State , 290 Ark. 130, 144, 717 S.W.2d 784, 791 (1986). Such is the case here. The stained underwear was collected for testing, and tape lifts from it were subsequently tested for DNA, resulting in a match to Bertrand's paternal DNA. As such, the underwear itself then corroborated the testimony of the witnesses who said that the victim reported something disgusting in her underwear, that they saw it, and that it prompted action on their part, including testing it.
Given the purpose for its admission, we cannot say the circuit court abused its discretion by concluding that the underwear's probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403. We therefore affirm the circuit court's decision to admit the underwear into evidence. Bertrand's conviction is affirmed.
Affirmed.
Gruber, C.J., and Gladwin, J., agree.