Stephen M. PARTIN *v.* STATE of Arkansas

CR 93-682 885 S.W.2d 21

Supreme Court of Arkansas
Opinion delivered October 17, 1994

*Charles A. Potter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Stephen M. Partin, appeals a judgment of the Miller County Circuit Court convicting him of second-degree murder, sentencing him to thirty-five years imprisonment, and fining him $15,000.00. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant's sole contention for reversal concerns the admissibility of testimony by a witness whose memory, appellant contends, was enhanced by hypnosis. We find no error and affirm the judgment.

The jury convicted appellant of murdering George O'Brien, the live-in boyfriend of appellant's former wife, Joy Partin. The murder occurred in a parking lot of the hospital where Trevor Partin was being treated for two gunshot wounds to the head from a .22 rifle. Trevor Partin is the ten-year-old son of appellant and Joy Partin.

Trevor became lost in the woods while his mother and O'Brien were camping. Upon being discovered, Trevor told his rescuers that he shot himself with the .22 rifle. However, while appellant was visiting Trevor in the hospital, Trevor told appellant in the presence of a nurse and a paramedic that the incident did not occur the way he had been telling. The testimony of the

nurse and the paramedic confirmed this. Appellant testified that Trevor then said that George O'Brien shot him; however, the testimony of the two witnesses could not confirm or negate this.

Minutes after Trevor told appellant that O'Brien shot him, appellant stated he witnessed O'Brien tampering with Trevor's intravenous equipment. Appellant reported this to the Texarkana police and a reporter from the *Texarkana Gazette*. The police notified hospital security, but to no avail as appellant again encountered O'Brien in his son's hospital room the following day. After appellant left the hospital, he encountered O'Brien in the parking lot. Appellant asked O'Brien what was going on. O'Brien reached for what appellant suspected was a weapon, but later proved to be car keys. Appellant shot O'Brien several times and immediately admitted to doing so.

After the close of appellant's defense, the state called Trevor as a rebuttal witness. Appellant objected to any testimony by Trevor on the basis that Trevor had been hypnotized. The state responded that one Sharon Nolte, a private detective, and one Lynn Cox, a Texas law enforcement officer, attempted the hypnosis of Trevor on videotape and were not working as agents of the prosecution. The state became aware of the tape when Trevor's mother brought the tape to the prosecutor during appellant's trial. The trial court ordered the state to produce Trevor's mother to testify outside the hearing of the jury as to the possible hypnosis of the child.

Joy Partin stated Sharon Nolte contacted her asking to hypnotize Trevor and record his statement. According to Ms. Partin, Ms. Nolte told her that Trevor would not have to testify in court if his hypnosis was videotaped. Ms. Partin stated that Trevor did not know if he was hypnotized, but opined that he was although she had never seen anyone hypnotized before. She stated the version of the shooting that Trevor had always told her had never changed from that he gave on the videotape — that Trevor shot himself.

After hearing Joy Partin's testimony regarding the videotape and alleged hypnosis, the trial court acknowledged that neither the state nor the defense had knowledge of or participated in the hypnosis and ruled there was no clear evidence before the

court that hypnotism occurred. The trial court stated that Trevor's statements to numerous witnesses from the time of the shooting through the time of the alleged hypnosis session were consistent, thus no case law prohibited his testimony.

Trevor Partin then testified before the jury. He stated that he got lost in the woods and shot himself with the rifle. Trevor stated that he did not tell his father that George O'Brien shot him. However, he also stated that he did not recall much of what happened in the hospital. Specifically, he stated he did not remember an occasion when a nurse and a paramedic were in his hospital room while his father questioned him about the shooting.

On appeal, appellant contends the trial court erred in admitting any testimony by Trevor because he had been hypnotized. Appellant's sole authority for this contention is *Rock* v. *State*, 288 Ark. 566, 708 S.W.2d 78 (1986), vacated, 483 U.S. 44 (1987). This court's decision in *Rock* held that hypnotically enhanced testimony of a criminal defendant is inadmissible *per se*, and that testimony of pre-hypnotic memories is admissible if shown by the proponent by clear and convincing evidence to be reliable and if limited to memories prior to the hypnosis. Appellant acknowledges this court's decision in *Rock* was vacated by the United States Supreme Court, but argues the vacation was limited to the effect on a defendant's Constitutional right to testify.

In *Rock* v. *Arkansas*, 483 U.S. 44 (1987), the United States Supreme Court observed that other states which have adopted an evidentiary rule excluding hypnotically refreshed testimony have done so only for the testimony of witnesses other than criminal defendants, and that in *Rock* v. *State*, this court failed to make the constitutional analysis necessary when a criminal defendant's right to testify is at stake. Thus, the judgment of this court in *Rock* was vacated by the Supreme Court. We need not determine whether the rules enunciated in *Rock* regarding admissibility of hypnotically enhanced testimony apply to a witness who is not a criminal defendant because we agree with the trial court's ruling that Trevor was not hypnotized.

 Rulings on the admissibility of evidence are matters within the trial court's sound discretion, and we will not reverse such rulings absent an abuse of that discretion. *Utley* v. *State*,

308 Ark. 622, 826 S.W.2d 268 (1992). Here, the trial court specifically found there was no clear evidence that Trevor had been hypnotized. The only evidence before the trial court on this particular point was the testimony of Trevor's mother. Granted, the lack of evidence on this point was due to the lateness of Joy Partin's disclosure of the tape. Nonetheless, based on the record before it, we cannot say the trial court erred in finding Trevor had not been hypnotized. Moreover, the testimony Trevor gave at trial was consistent with the videotape and all the other accounts Trevor gave of the incident. Consequently, we cannot say the trial court abused its discretion in admitting the testimony.

The state contends that even if error was committed in admitting this testimony it would be harmless because the evidence was not central to appellant's defenses of duress and self-defense. We agree. Trevor's testimony is irrelevant to appellant's state of mind concerning his duress or self-defense defenses. Moreover, numerous witnesses, including Trevor's rescuers and hospital personnel, stated that Trevor said he shot himself. Thus, the same evidence was properly presented to the jury by other witnesses without objection, and if any error occurred in admitting Trevor's testimony, it was harmless. *Thompson* v. *State*, 306 Ark. 193, 813 S.W.2d 249 (1991) (citing *Orr* v. *State*, 288 Ark. 118, 703 S.W.2d 438 (1986)).

The judgment is affirmed.