# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2920

_____

| | |
|---|---|
| Nathaniel Thomas, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the Eastern |
| Larry Norris, Director, Arkansas | * District of Arkansas. |
| Department of Correction, | * |
| | * |
| Appellee. | |

_____

Submitted: June 17, 1999

Filed: August 9, 1999

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and KYLE,[1]
District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Nathaniel Thomas was convicted of being an accomplice to the murder of three
people and was sentenced to life imprisonment plus two terms of forty years. *See
Thomas v. State*, 868 S.W.2d 483 (Ark. 1994); *see also Thomas v. State*, 911 S.W.2d
259 (Ark. 1995) (*per curiam*). Mr. Thomas's counsel failed to move for a directed

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District
of Minnesota, sitting by designation.

verdict at the end of the defendant's case, *see* Ark. R. Crim. P. 33.1, and Mr. Thomas maintains that this failure denied him the effective assistance of counsel that is guaranteed by the sixth amendment. The district court[2] dismissed Mr. Thomas's petition for relief under 28 U.S.C. § 2254 on the ground that he had not shown that the state courts' rejection of his post-conviction petition, *see Thomas v. State*, 954 S.W.2d 255 (Ark. 1997), was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1). We affirm.

## I.

Mr. Thomas's petition cannot properly be adjudicated without knowing whether his counsel's failure to move for a directed verdict denied him his constitutional right not to be convicted on the basis of evidence that could not support a verdict of guilty. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *Jackson* squarely held that a person's right to due process is violated when he or she is deprived of liberty but no reasonable jury could have convicted that person on the basis of the evidence presented at trial. *Id.* at 314-16, 318-19, 323-24. Thus, Mr. Thomas's claim is that the state courts' rejection of his petition was "contrary ... to clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), because the evidence in his trial could not support a conviction. We proceed, therefore, to an evaluation of the evidence presented at Mr. Thomas's trial.

Mr. Thomas quite rightly characterizes the evidence against him as hardly overwhelming. It was more than obvious that three murders had been committed, but the proof connecting Mr. Thomas to them consisted entirely of his own custodial statements. He admitted having been in the parking lot near the apartment where the murders took place at the time that they took place, he knew details about the particular parts of the apartment in which the individual victims were murdered, and he identified

---

[2]The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

one of the murder weapons. He also stated that he did not get a look at one of the victims (who walked into the apartment after the perpetrators had entered it), but Mr. Thomas later identified him in a photo lineup. The Supreme Court of Arkansas pointed out as well that Mr. Thomas led the authorities to some bloody clothes that he said the murderers were wearing at the time of the killings, *see Thomas v. State*, 954 S.W.2d at 259, but the evidentiary value of those clothes was more than a little dubious because the FBI laboratory established that the blood on the clothes did not match that of any of the victims.

Mr. Thomas tried to explain away his familiarity with the details of the crime by saying that he learned them from the perpetrators. He had gone with them to the scene of the crime, he said, to help collect a drug debt, but when they gathered up guns, and it appeared to him that they intended to commit violent acts, he declined to participate and stayed behind in the parking lot. He could identify one of the murder weapons, he said, because the murderers had showed it to him and he had handled it.

We think that on the basis of this record a reasonable fact finder could draw the inference that Mr. Thomas was present at, and participated in, the murders, and we think furthermore that this inference is sufficiently strong to allow a jury to conclude beyond a reasonable doubt that he did so. The jury was free to disregard Mr. Thomas's self-serving explanation as to how he knew the details of the crime, and also to find that he was deliberately trying to minimize his connection to the crime scene by stating that he could not see the face of a victim whose photograph he nevertheless was subsequently able to identify.

Mr. Thomas wishes to make a good deal of the fact that the three men whom he identified as the perpetrators were not his co-defendants, despite the fact that the Supreme Court of Arkansas said that they were, *see id.* In fact, Mr. Thomas asserts, these three people were never tried for the murders at all. We do not know whether they were or not, but we conclude that the matter is irrelevant. What matters is what

the jury heard, and what it heard was Mr. Thomas's statement that he was with the perpetrators before the murders and continued thereafter to be associated with them in the drug business. Mr. Thomas thus admitted an association with those who he claimed committed the crime, and he cannot now be heard to complain that the jury believed him, if it did, even if those whom he identified as the killers were not in fact the perpetrators.

## II.

Mr. Thomas also maintains that even if the record was sufficient to convict him, he is nevertheless entitled to relief, because his counsel's failure to move for a directed verdict amounts to a structural defect in his trial and thus prejudice is presumed. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). In support of his argument, Mr. Thomas directs our attention to *McGurk v. Stenberg*, 163 F.3d 470 (8th Cir. 1998).

That case, however, is significantly different from the present one, and legally distinguishable, because in *McGurk* the defense counsel's error resulted in the defendant's being denied a jury trial altogether, and we held that this was the kind of error that is not amenable to harmless-error analysis. *Id.* at 473-75. That is because it is manifestly impossible to know what a jury would have done without at the very least knowing what the evidence at the trial would have been. *Id.* at 474-75. By contrast, in the present case Mr. Thomas was not denied a jury trial, or, indeed, any other right that can fairly be described as structural. As we have shown, Mr. Thomas was not constitutionally entitled to have his case withheld from the jury, and therefore his counsel's error, if any, was harmless.

## III.

For the reasons indicated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.