Cite as 2023 Ark. App. 383

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-23-159

| | |
|---|---|
| RODNEY DEWAYNE SMITH<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered September 13, 2023<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT<br>[NO. 01SCR-20-35]<br><br>HONORABLE DONNA GALLOWAY, JUDGE<br><br>AFFIRMED |

CINDY GRACE THYER, Judge

Appellant Rodney DeWayne Smith appeals the order of the Arkansas County Circuit Court revoking his probation and sentencing him to a term of three years in the Arkansas Department of Correction. On appeal, he asserts that the circuit court committed reversible error by admitting testimony into evidence in violation of the Confrontation Clause. We affirm.

In May 2021, Smith pled guilty to one count of first-degree forgery and one count of third-degree escape.[1] He was sentenced to four years' probation and was assessed $955 in

---

[1]Smith was originally charged with one count of use or possession of paraphernalia to manufacture methamphetamine or cocaine; four counts of first-degree forgery; one count of fleeing on foot; and one count of third-degree escape. In exchange for his plea, the remaining counts were nolle prossed.

fines, fees, and court costs to be paid in $50 monthly increments. His probation was conditioned in part on his reporting to his supervising officer; obeying all federal and state laws; refraining from the ownership, use, and possession of firearms; and from the use, sale, distribution, or possession of any controlled substances. Approximately four months later, on September 20, 2021, the State filed a petition to revoke Smith's probation asserting that Smith had violated the terms and conditions of his probation by failing to obey Arkansas law; by testing positive for controlled substances; by possessing or owning a firearm; and by failing to pay his financial obligations.

The revocation hearing was held on September 8, 2022. The State's first witness at the hearing was probation officer Mahir Tucker, who was called to testify regarding Smith's positive drug screen. Agent Tucker advised the court that, while he was familiar with Smith's case through the probation-office records, he had not met Smith until the revocation hearing. Because Agent Tucker was not Smith's supervising officer and had not conducted the drug screen at issue, counsel objected to his testimony. Counsel asserted that, because the drug screen administered to Smith required interpretation by the supervising officer and because his supervising officer was not present to testify at the hearing, allowing Agent Mahir to testify regarding the results of that drug screen would violate Smith's constitutional right to confrontation.

Due to the nature of defense counsel's objection, the court allowed the parties to voir dire the witness as to his knowledge surrounding Smith's drug screen. On voir dire, Agent Tucker testified that the drug screen at issue consisted of a urine test conducted with a cup

with the results indicated by the presence or the absence of a line on a test strip. He stated he was trained in the administration of the test; that the test requires supervising officers to interpret the results; and that if the results were questionable, a second officer was needed to verify the test results. He explained that if a second officer was needed to interpret the results, the Eomis report would indicate that such assistance had been required. Additionally, if the offender challenged the veracity or accuracy of the test results, the test results could be submitted to a lab for further testing. Again, if such a request was made, the Eomis reports would reflect the request and would identify the verifying officer. He then testified that the Eomis report did not indicate that Smith's drug screening required confirmation by a second officer. No explanation was given as to why Smith's probation officer was not available to testify at the hearing.

After hearing Agent Tucker's voir dire testimony and the arguments of counsel, the court found that Smith's confrontation rights would not be violated by the introduction of this evidence through Agent Tucker and that good cause existed for not allowing confrontation. More specifically, as to its good-cause finding, the court found the following:

> The good cause is, as I stated a moment ago, there is a procedure that is followed when it comes to the training of drug testing and the reading of those results. And Agent Tucker was able to specifically specify that procedure, and has also indicated and stated that it is a requirement and part of the process of reporting those direct test results whenever the line is blurred and there needs to be additional reading from another officer to verify whether or not that actually is going to be an interpretation of a positive drug test result or not. So that is the good cause that I am stating.

Once his testimony was deemed admissible, Agent Tucker testified that the Eomis records indicated that Smith had submitted to a drug screen on August 6, 2021, in the

Stuttgart probation office; that the test returned positive for cocaine, THC marijuana, and methamphetamine; and that the petition to revoke was premised, in part, on that positive drug screen. He admitted on cross-examination that he was working in the Pine Bluff office at the time of Smith's drug screening, that he did not personally conduct the test, and that he did not have any personal knowledge as to how the lines appeared on the drug test or if a second opinion was necessary to verify the positive results. In fact, he had no direct knowledge of whether the test performed was a urine, blood, or breath test.

The State's next witness was Karen Bronson, a financial coordinator with the Arkansas County Prosecutor's Office. She testified that Smith had financial obligations of $955 and that he had not made any payments toward those financial obligations. On cross-examination, however, she stated she was unaware of whether he had been released from custody since his conviction.

At the close of the State's case, Smith moved to dismiss the drug-test violation based on the violation of his confrontation rights as set forth in *Pope v. State*, 2020 Ark. App. 413, 607 S.W.3d 512, and the failure-to-pay allegation because there had been no evidence of his release from custody sufficient to trigger his payment obligations. Counsel also moved to dismiss the other allegations in the petition since there had been no testimony on those counts. The court granted the motion to dismiss on all allegations except the allegation regarding his alleged illegal drug usage.

Thereafter, Smith chose to testify in his own defense. He confirmed that he had submitted to a urine test for controlled substances on August 6, 2021, but he denied using

either cocaine or methamphetamine prior to the drug test. He admitted however, that he had used marijuana while he was on probation.

In closing argument, defense counsel acknowledged the "minor violation" of Smith's probation and requested that the court convert the remaining probation time to a suspended imposition of sentence (SIS) given the nature of the violation—a single failed drug screen—and given the fact that Smith was facing time on several pending cases. In the alternative, defense counsel requested the minimum sentence on the escape charge and a fine or an SIS on the forgery charge. The State disagreed, noting that Smith had admitted his violation, and it recommended a five-year sentence. At the conclusion of the hearing, the circuit court revoked Smith's probation and sentenced him to three years' imprisonment.

On appeal, Smith argues that the circuit court erred in finding "good cause" to allow Agent Tucker to testify from the notes of his supervising officer, when the supervising officer was not available on cross-examination. He claims this error resulted in a violation of his constitutional right to confront and cross-examine the witnesses against him. We agree.

Generally, a defendant in a revocation hearing is not entitled to the full panoply of rights that attend a criminal prosecution, but he or she is entitled to due process. *Goforth v. State*, 27 Ark. App. 150, 767 S.W.2d 537 (1989). As we recognized in *Goforth*, the United States Supreme Court has held that a defendant is entitled to the right to confront and cross-examine adverse witnesses unless good cause is shown for not allowing confrontation. *Id.* at 152, 767 S.W.2d at 538 (citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)). This holding is codified at Arkansas Code Annotated section 16-93-307(c)(1) (Repl. 2016). According to

5

*Goforth*, the circuit court must balance the probationer's right to confront witnesses against grounds asserted by the State for not requiring confrontation. *Goforth*, 27 Ark. App. 150, 767 S.W.2d 537. First, the court should assess the explanation offered by the State for why confrontation is undesirable or impractical. *Id.* A second factor that must be considered is the reliability of the evidence that the State offers in place of live testimony. *Id.*

Responding to Smith's objection that he would not be able to confront his reporting officer, the State explained that good cause existed because there was a policy and procedure in place for administering a drug test; that Agent Tucker was trained in the policy and procedure; that standard records were kept on each probationer in the ordinary course of business; that Agent Tucker had access to the supervising officer's notes and records; and that no additional testimony would be required regarding the results. Notably absent, however, was the name of his supervising officer and why he or she was not available to testify.

Having reviewed the record before us, it does not appear that the circuit court in this case considered the first prong of the balancing test required by *Goforth.* Despite any evidence as to why the supervising officer was unavailable to testify thereby making confrontation impractical, the court found that good cause existed due to the reliability of the evidence. This simply was not enough to satisfy the requirements set forth in *Goforth*. Moreover, the testimony elicited at trial revealed that, in some instances, the interpretation of the drug screen requires some subjective interpretation and/or verification by a second officer. While the records Agent Tucker relied on did not indicate that verification by a

6

second officer was required in this case, Agent Tucker had no personal knowledge as to the visual conclusiveness of the test or whether such verification should have been provided. As a result, Smith was prevented from conducting an effective cross-examination on the validity of the test results. Thus, we hold that the Confrontation Clause was violated. *See Pope*, *supra* (holding that defendant's confrontation rights were violated when supervising officer did not testify, but his notes were used by another probation officer to establish a probation violation); *see also Nelson v. State*, 2018 Ark. App. 324, 551 S.W.3d 417 (holding that defendant's confrontation rights were violated by officer's testimony regarding the cause of defendant's discharge from program when no one from the program testified); *see also Graham v. State*, 2010 Ark. App. 162 (holding that defendant's confrontation rights were violated by officer's testimony concerning defendant's delivery of drugs to a confidential informant when informant did not testify).

However, when error occurs at revocation proceedings involving the constitutional right to confront adverse witnesses, those errors are subject to harmless-error analysis. *Fountain v. State*, 2014 Ark. App. 71; *see also Green v. State*, 2015 Ark. App. 291, 461 S.W.3d 731. Accordingly, because we hold that the Smith's confrontation rights were violated, we must next determine if the error was harmless.

We conduct this analysis utilizing a variety of factors identified by our supreme court. These factors include the importance of the witness's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-

7

examination otherwise permitted, and the overall strength of the State's case. *Green*, 2015 Ark. App. 291, at 5, 461 S.W.3d at 734 (citing *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001)). This court will not reverse unless prejudice has been shown. *Fountain*, *supra*.

To revoke probation, the circuit court must find by a preponderance of the evidence that the defendant violated a condition of his probation, and we will not reverse the circuit court's findings in that regard unless they are clearly against the preponderance of the evidence. *Nash v. State*, 2023 Ark. App. 285, 667 S.W.3d 579. The circuit court here found that Smith had violated the terms and conditions of his probation requiring him to abstain from illegal drug use. If Agent Tucker's testimony was the only evidence introduced to support a revocation of Smith's probation based on a drug-usage violation, we would clearly be required to reverse Smith's revocation on Confrontation Clause grounds. *See Pope*, *supra*. But it was not. Smith testified at the revocation hearing and admitted that he used marijuana during the term of his probation. Thus, introduction of Agent Tucker's testimony regarding Smith's positive drug screen is merely cumulative to the evidence of Smith's admission to illegal drug usage. Smith's admission, on its own, was sufficient to support the revocation. *See Ingram v. State*, 2009 Ark. App. 729, 363 S.W.3d 6 (holding that there was no need for the State to introduce further evidence when the appellant admitted alleged violations). As a result, any error was harmless.

Smith argues that we should not consider his admission in our harmless-error analysis because he would not have testified if the court had correctly excluded Agent Tucker's

testimony during the State's case in chief.[2] Our law is clear that, had Smith not testified, there would have been no admissible evidence before the court to support the alleged probation violation; that the Confrontation Clause error would not have survived a harmless-error analysis; and that reversal would be appropriate. *See Pope, supra.* However, that is not what occurred. Here, unlike the defendant in *Pope*, Smith elected to proceed with a defense and thereby waived any argument to the court's consideration of additional evidence. *See, e.g., Thomas v. State*, 315 Ark. 504, 506, 868 S.W.2d 483, 485 (1994) ("A defendant who goes forward with the production of additional evidence after a directed

---

[2]In support of his claim, Smith cites *Bynum v. State*, 2018 Ark. App. 477, 561 S.W.3d 755. In *Bynum*, this court was faced with whether trial counsel's representation of Bynum was ineffective due to his failure to seek dismissal of numerous charges on statute-of-limitations grounds. The facts were these:

Bynum was convicted on ten counts of fourth-degree sexual assault committed against AH; one count of second-degree sexual assault committed against TH; and one count of second-degree sexual assault committed against CP. On direct appeal, we reversed his fourth-degree sexual-assault convictions on statute-of-limitation grounds. Bynum then filed a petition for postconviction relief asserting ineffective assistance of counsel for trial counsel's failure to request dismissal of those charges at trial. He alleged that, because the jury had heard testimony about twelve charges instead of two, confidence in the outcome of the trial had been compromised. In our consideration as to whether trial counsel's deficient performance was prejudicial, this court noted that, while AH's testimony would have been admissible under the pedophile exception, it was unknown whether AH would have agreed to testify if the charges related to his abuse had been dismissed. While this seemingly supports Smith's position, *Bynum* is only minimally persuasive because the uncertainty of procuring AH's testimony in that scenario was only one of a number of factors considered by the court in making its determination that reversal was appropriate. Instead, our focus in the analysis of prejudice was primarily on the fact that no limiting instruction was given as to the use of AH's testimony and the fact that Bynum had been charged with twelve crimes against three victims instead of two crimes against two victims. We found the latter in itself to be prejudicial to Bynum.

verdict motion is overruled waives any further reliance upon the former motion."). This additional evidence consisted of his admission that he had violated the terms and conditions of his probation by smoking marijuana. This admission is sufficient to support the probation revocation and renders the otherwise reversible error harmless. Therefore, we affirm.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.